```
                                                  CLERK, U.S. BANKRUPTCY COURT
                                                      DISTRICT OF OREGON

                                                      DEC 09 2010

                                                  LODGED_____REC'D_____
                                                  PAID_____DOCKETED___
```

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 10-63024-aer7 |
| CRAIG ROBERT SCHUHMANN and ) | |
| SUVENDRINI H.C. SCHUHMANN, ) | MEMORANDUM OPINION |
| ) | |
| Debtors. ) | |

This matter comes before the court on the Chapter 7 Trustee's objection to Debtors' claim of homestead exemption. After hearing, the parties submitted the matter on the record.

Facts:

On May 1, 2009, Debtors Craig Schuhmann and Suvendrini Christopher-Schuhmann (Debtors) executed a "Month To Month Rental Agreement" (**the Agreement**) for a dwelling in Klamath Falls, Oregon. Rent thereunder was $650 per month. At the time and under the Agreement, Debtors paid a $350 security deposit plus last month's rent.[1] Under the Agreement either Debtors or the landlord could terminate the tenancy with 30 days' written notice. Rent for a particular month was due on the 1st of that month. The Agreement did not require Debtors to "prepay" any other rent besides the last month's. At some point prior

---

[1] It appears that before occupying the subject premises Debtors had been renting a dwelling on 1702 Worden St., Klamath Falls, from the same landlord. The "last month's rent" required under the Agreement was transferred over from Debtors' prior tenancy.

MEMORANDUM OPINION-1

to their Chapter 7 filing Debtors paid their landlord $3,900 for what they label "prepaid rent" which was refundable upon notice of termination of the tenancy.

Debtors filed their Chapter 7 petition on May 20, 2010. On Schedule B they listed the $3,900 in "prepaid rent" and claimed this sum exempt on Schedule C under O.R.S. 18.395 and 18.402, Oregon's homestead exemption.

Discussion:

The issue concerns the scope of Oregon's homestead exemption.[2] More particularly, resolution centers on whether the holding in Sticka v. Casserino (In re Casserino), 379 F.3d 1069 (9th Cir. 2004) should be extended to a debtor who "prepays rent" under a month-to-month rental agreement[3] when the agreement itself does not require such payment. The Trustee argues that based on Casserino's rationale, its holding should not be extended. Debtors argue Casserino imposes no limitations on the right to exempt "prepaid rent" so long as the amount is within the homestead statute's $50,000 limit for joint debtors. The court agrees with the Trustee.

In Casserino the debtor was required to pay, under a month-to-month rental agreement, $750 as last month's rent and a $500 security deposit ($100 of which was non-refundable). In his subsequent Chapter 7 bankruptcy he claimed the last month's rent and the refundable portion of the security deposit exempt under Oregon's homestead exemption. In allowing the exemption, the Ninth Circuit Court of Appeals affirmed both this court and the Bankruptcy Appellate Panel. In doing so, it first examined the scope of the term

---

[2] As permitted by 11 U.S.C. § 522(b)(2), Oregon has "opted out" of the federal exemption scheme. O.R.S. 18.300.

[3] Under the Oregon Residential Landlord and Tenant Act, "Month-to-month tenancy" is defined as:

> [A] tenancy that automatically renews and continues for successive monthly periods on the same terms and conditions originally agreed to, or as revised by the parties, until terminated by one or both of the parties.

O.R.S. 90.100(26).

MEMORANDUM OPINION-2

"owner" in ORS 18.395(1).[4] Based on: 1) prior caselaw; 2) the homestead statute's purpose (which is to preserve a roof over the debtor's head); and 3) the rule that exemption statutes are to be liberally construed, the court found that the homestead exemption protected any property interest which included a current right to possession. Because such a right was included in a leasehold, the term "owner" included leaseholders.

The court then examined whether the homestead exemption included the last month's rent and security deposit. It first noted that only by paying these sums did the debtor become entitled to take possession according to the month-to-month agreement's terms. Had the landlord been required to turnover the security deposit and last month's rent to the trustee, the debtor would have been in material breach of the agreement. Thus, the court concluded, the last month's rent and security deposit were not severable from the month-to-month agreement. Further, the court opined, that under Oregon law and the agreement itself, payment of the last month's rent and security deposit conferred specific rights upon the debtor that were part of the leasehold interest, namely: 1) the right to live in the apartment for one month without paying additional rent, and 2) the right upon vacating the premises to have repairs costing $400 or less satisfied from his already committed funds. The court emphasized that although these benefits were to be enjoyed in the future, the debtor became entitled to them upon paying the deposit.

> Because the interest protected by the homestead exemption derives from the residential leasehold, the benefits and burdens of the leasehold-including both the obligation to pay a deposit and the right to have it applied to particular purposes-are an integral part of the leasehold. Therefore they cannot be detached from the exemptible leasehold interest.

---

[4] O.R.S. 18.395(1) provides in relevant part:

> A homestead shall be exempt from sale on execution, from the lien of every judgment and from liability in any form for the debts of the *owner* to the amount in value of $40,000, except as otherwise provided by law. . . . When two or more members of a household are debtors whose interests in the homestead are subject to sale on execution, the lien of a judgment or liability in any form, their combined exemptions under this section shall not exceed $50,000 . . . . (emphasis added).

MEMORANDUM OPINION-3

Id. at 1074. Finally, the court looked to the ramifications of failing to exempt the last month's rent and security deposit, noting that if landlords were required to turnover these sums to the trustee, they would presumably demand a replacement deposit that in many cases a debtor could not pay, which could lead to eventual eviction. This result claimed the court "would completely subvert the homestead exemption's purpose . . . ." Id. at 1075.

Here, the "prepaid rent" has few if any of the indicia deemed relevant in Casserino. First, neither the Agreement nor Oregon law required that it be paid to allow Debtors to take and keep possession of the leased premises. Put another way, a failure to "prepay" would not put Debtors in material default exposing them to eviction. Further, the prepaid rent didn't <u>entitle</u> the Debtors to have the deposited sums applied to future months' rent as nothing in the Agreement or Oregon law barred the landlord or Debtors from terminating the tenancy (upon 30 days' notice), before the month for which the "prepaid rent" was earmarked. Finally, if forced to turnover the "prepaid rent" to the Trustee, the landlord would have no right to demand a replacement "prepaid" amount.

Despite the above distinctions, Debtors cite three post-Casserino cases as persuasive authority.[5] The first is not on point; the second is actually contrary to Debtors' position; and the third, while arguably on point will not be followed. First, Debtors cite In re Wynn, 369 B.R. 605 (Bankr. D. Or. 2007). There this court held that certain monthly rent payments were exempt, Id. at 607-608; however this was in the context of deciding whether O.R.S. 18.395(2)'s[6] reinvestment requirements had been met. The Wynn case held that because a leasehold under Casserino qualifies as an exemptible homestead interest, paying rent from the

---

[5] There is scant authority discussing the issue of "prepaid rent" in the context at bar.

[6] O.R.S. 18.395(2) provides:

> The exemption shall extend to the proceeds derived from such sale to an amount not exceeding $40,000 or $50,000, whichever amount is applicable under subsection (1) of this section, if the proceeds are held for a period not exceeding one year and held with the intention to procure another homestead therewith.

MEMORANDUM OPINION-4

Case 10-63024-fra7    Doc 23    Filed 12/09/10

proceeds of a prior homestead can appropriately be considered "reinvestment" in a new homestead. Wynn did not involve "prepaid rent" in the context at bar.

The second case, In re Coffey, 339 B.R. 689 (Bankr. N.D. Ind. 2006), involved a debtor who executed a one-year residential lease where the rent was payable at $725 per month. At the time she executed the lease, along with paying a $750 security deposit, debtor "prepaid" $7,250 representing 10 months' rent. Approximately three and half months into the tenancy, debtor filed Chapter 7, claiming her leasehold exempt under the Indiana homestead exemption, to which the Chapter 7 trustee objected. The trustee argued the "prepaid" rent was essentially a type of security deposit or escrow account subject only to Indiana's $100 exemption for intangibles. He argued that because the lease was silent as to prepayment of rent and as to the status of the "prepaid" funds in the event of breach, the "prepaid" funds were only a cash reserve held by the landlord to apply to the monthly rent when it became due. Thus, the rent was more like a security deposit. The court disagreed with the trustee's characterization. It noted that upon execution of the one-year lease, the debtor was obligated for the total rent payable for the entire term. Id. at 692. It further noted the mechanism for such payment (monthly installments of $725) did not transform the rental into a month-to-month tenancy. Id. Under the lease, debtor had the right to possess the leased premises for a year and rights incidental thereto, and it was these rights which constituted the homestead exemption. Id. at 692-693. The court disagreed with Casserino's holding that certain prepaid sums were included in these bundle of rights, reasoning that the prepayments merely affected the exemption's value. Id. at 696. It then examined Indiana law and held the leasehold was within the Indiana homestead exemption's ambit. Id. at 698. To the extent Coffey can be read as holding that prepaid rent should not be included in the bundle of rights supporting a homestead, it runs contrary to Debtors' position here. Further, Coffey can be distinguished from the facts at bar, in that there, the lease was for a one-year term which obligated the debtor to pay the entire term's rent (a portion of which was paid in advance), whereas here (although renewable) the Agreement's term is one month, with no obligation (upon 30 days' notice) to pay beyond such period.

Finally, Debtors cite In re Rutland, 318 B.R. 588 (Bankr. M.D. Ala. 2004). There a couple months before filing Chapter 7, the debtor used $4,800 drawn from a retirement account to "prepay" her apartment

MEMORANDUM OPINION-5

rent for approximately one year. She claimed the $4,800 exempt under Alabama's homestead exemption. The court first examined Alabama law and concluded leaseholds come with the purview of the homestead exemption. The court then concluded that "[i]t follows that the prepaid rents attributable to the leasehold may be claimed exempt under Alabama law," citing Casserino, amongst other cases. Id. at 591. Rutland may be distinguishable from the case at bar as it is not clear whether a term leasehold as opposed to a month-to-month was involved. If Rutland involved a month-to-month tenancy, this court respectfully declines to follow it.

In concluding the "prepaid rent" at bar does not fall within Oregon's homestead exemption, the court must bear in mind that normally the homestead exemption involves equity in a debtor's home, be it mobile or on land. Casserino was a limited exception whereby certain cash sums were included because they were so wrapped into the interest in the home that they couldn't be severed. Debtors' present attempt to shelter $3,900 from their creditors would in essence create a "cash" homestead exemption. This would not further the homestead statute's purpose. Rather, it would permit Debtors to use their landlords as depositories for up to $50,000 to prepay sums that are fully refundable after, at most, 30 days' notice by either tenant or landlord.[7]

//////
//////
//////
//////
//////
//////

---

[7] Post-Casserino, the Oregon legislature enacted what are presently numbered O.R.S. 90.300(16)(a) and 18.618(1)(a)(E) which provide that residential "security deposits" and "prepaid rent" are not garnishable property. Under O.R.S. 90.300(1), "security deposits" include "last month's rent deposits." The relevant terms are defined in O.R.S. 90.100(37) ("security deposit"); 90.100(31)("prepaid rent"); 90.100(33)("rent"); and 90.100(22)("last month's rent deposit"). Since no party has raised O.R.S. 90.300(16)(a) or 18.618(1)(a)(E), the court takes no position on whether they supersede Casserino and/or create an exemption in the prepayments at bar. Further, although labeled as such throughout this opinion for convenience sake, the court takes no position as to whether the "prepaid rent" at bar comes within the ambit of O.R.S. 90.100(31) & (33).

MEMORANDUM OPINION-6

Based on the above, the Trustee's objection will be sustained and Debtors' claim of exemption disallowed. A separate order shall be entered. This opinion constitutes the court's findings of fact and conclusions of law pursuant to FRBP 7052. They shall not be separately stated.

*Albert E. Radcliffe*

ALBERT E. RADCLIFFE
Bankruptcy Judge

MEMORANDUM OPINION-7